LINUS L. BAKER KS 18197
6732 WEST 185TH TERRACE
STILWELL, KANSAS 66085
913.486.3913
LINUSBAKER@PRODIGY.NET
*Attorney for the former CVS nurse practitioner Suzanne Schuler*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Suzanne Schuler** <br>         Plaintiff <br> v. <br><br> **MinuteClinic Diagnostic of Kansas, P.A.** <br><br> **CVS Pharmacy Inc.** <br> **D/B/A CVS Health** <br>         Defendants <br><br> SERVE: <br><br> The Corporation Company, Inc. <br> 112 SW 7th Street Suite 3c, Topeka, KS 66603 | 2:22-cv-02415-KHV-KGG |

### AMENDED PETITION

The plaintiff Suzanne Schuler for her Amended Petition states as follows:

### INTRODUCTION

MinuteClinic Diagnostic of Kansas, P.A, (CVS) employed Suzanne Schuler as a nurse practitioner from 2009 to 2021. In 2011, it then required that prescriptions to refill contraceptives be performed. Ms. Schuler asked for a religious exemption to this requirement and received a religious accommodation based upon her sincere religious beliefs. In 2015, MinuteClinic changed Ms. Schuler's job description to require that she prescribe contraceptives. Ms. Schuler requested a religious

**1**

exemption. Ms. Schuler received a religious accommodation to that requirement. The accommodations allowed Ms. Schuler to reschedule those services or to have an individual go to a different nearby CVS store to obtain the birth control prescription task. In 2021, MinuteClinic revised its position description of "Nurse Practitioner / Physician Assistant" but did not change the primary duties and responsibilities of that position. Despite no complaints or incidents resulting from that accommodation, MinuteClinic abruptly stopped respecting Ms. Schuler's religious beliefs in September 2021 and fired her October 31, 2021 for refusing to prescribe abortion-causing drugs.

## JURISDICTION AND VENUE

1. The Court has personal and subject matter jurisdiction under Title VII of the Civil Rights Act of 1964.

2. Venue is proper in this judicial district as the defendants regularly conduct substantial business activity in the state of Kansas.

### Parties

### Plaintiff

3. The plaintiff Suzanne Schuler is an adult citizen of the United States and a resident of the state of Kansas.

4. Ms. Schuler is a nurse practitioner licensed (No. 44708) to practice in Kansas.

5. Ms. Schuler believes life begins at conception.

6. Ms. Schuler's faith prohibits her from providing, prescribing, or facilitating the use of any drug, device, or surgical procedure that can cause abortion – including drugs like certain hormonal contraceptives, Plan B, and Ella.

7. Violating these religious beliefs and convictions by participating in the destruction of innocent human life would cause Ms. Schuler substantial harm.

**Defendants**

8. MinuteClinic Diagnostic of Kansas, P.A, has its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

9. MinuteClinic operates within a CVS Store and Pharmacy located at 18351 W 119th Street, Olathe, KS 66061.

10. MinuteClinic is fully owned and controlled by CVS Pharmacy, Inc., which is a Delaware corporation that also has its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

11. MinuteClinic operates medical facilities that provide non-emergent medical treatment to patients on an appointment and walk-in basis.

12. CVS Pharmacy operates a CVS Store and Pharmacy located at 18351 W 119th Street, Olathe, KS 66061.

ADMINISTRATIVE PREREQUISITES

13. Plaintiff Schuler filed a Charge of Discrimination with the Equal Employment Commission against the defendants which was assigned the charge number 563-2022-00500. Defendants received notice of this charge.

14. On September 28, 2022, the EEOC issued Plaintiff a right-to-sue notice authorizing her to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

15. This action was filed before December 27, 2022, within 90 days of the EEOC's issuance of the plaintiff's right-to-sue notice, and within two years of the discrimination alleged herein.

### Count 1
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.
### RELIGIOUS DISCRIMINATION

16. CVS offers walk in appointments utilizing nurse practitioners for its CVS Pharmacy clinics in the Kansas City area.

17. CVS nurse practitioners are advertised to the public as "working autonomously" and being independent.

3

18. The CVS Pharmacy clinics provide services categorized as "minor illnesses," "minor injuries" "Screenings & monitoring" "skin conditions" "travel health," "vaccinations and injections," "wellness & physicals," and "women's services."

19. As of 2015, providing those eight categories of services was a job requirement for CVS nurse practitioners.  The applicable job description of a nurse practitioner contained five categories: "Patient-Centered Quality and Safety," Customer Service Excellence," Healthcare Environment Management," "Business Acumen," and "Autonomy."

20. As of 2015, providing those eight categories of services was a function to be performed by a CVS nurse practitioner.

21. Not all Minute Clinics offer the same operating hours.  Sometimes some Minute Clinics in an area are closed for a day for various reasons which require potential CVS customers to be directed to a nearby Minute Clinic.

22. Not all clinics in the Kansas City area provide the same services. For example, not all clinics provide for covid-19 vaccine injections.

23.  In 2009, MinuteClinic offered Ms. Schuler a job as a nurse practitioner at CVS stores in Kansas. Ms. Schuler accepted that employment offer on August 4, 2009.

24. When Ms. Schuler was hired, Ms. Schuler was able to provide all of the services CVS offered to walk in customers.

25. When Ms. Schuler was hired, CVS permitted Ms. Schuler to operate autonomously and CVS did not require that she fill prescriptions for contraceptives, birth control, or Plan B (abortifacients) as a part of Women's services.

26. In 2011, CVS altered Ms. Schuler's job description to require that she refill prescriptions for contraceptives.

27. On November 28, 2011, Ms. Schuler completed a Conscience Policy Form (Conscience Policy: Appendix 1) which stated "If you are an Agent of MinuteClinic engaged in the delivery of health care either to a patient or to a specific group in a population and need to request approval for a Religious or Cultural Accommodation, complete the following form and submit it to your immediate Supervisor and area Human Resources Director."

28. In the request she asked for an accommodation from "prescribing refills of oral contraceptive pills; administering contraceptive injection."

**4**

29. CVS did not require yearly reporting by the local Minute Clinic or an area Human Resource Director regarding a CVS nurse practitioner requesting or being granted a religious accommodation.

30. For each year since 2011 through 2021, CVS had no centralized record keeping system for each year that identified each nurse practitioner who requested or was granted a religious accommodation.

31. Ms. Schuler sought to continue to work independently and requested a religious exemption to this requirement in women's services and received a religious accommodation based upon her sincere religious beliefs. Ms. Schuler continued to provide all of the services in the other seven service categories.

32. Providing a religious accommodation to Ms. Schuler did not signal CVS's agreement with her religious beliefs that created the need for the accommodation.

33. CVS did not require Ms. Schuler to report these events or the number of any customers who were not provided those services by Ms. Schuler.

34. In 2015, MinuteClinic again changed Ms. Schuler's job description in providing women's services to require that she prescribe contraceptives, birth control, and Plan B (abortifacients). On January 25, 2016, Ms. Schuler emailed CVS stating:

> Ladies,
>
> In 2011, when MinuteClinic first started prescribing refills for oral contraceptives, I filed a Conscience Policy request, which was approved. Because of that, I did not file a new one when MinuteClinic decided that providers could provide contraceptive injections or with the most recent decision that providers could initiate contraceptives. However, it recently occurred to me that you might not be aware of this status, so it seemed wise to notify you of this long-standing situation. This has only come up a couple of times since 2011, and each time I have contacted a practitioner in a nearby clinic and re-directed the patient to a provider who was willing to provide the service.

35. LeAnn Holmes returned the email asking Ms. Schuler to "please fill out a new form."

36. CVS asked follow up questions to which Ms. Schuler responded with either "yes" or "no":

> -Are you are willing to refill a prescription for contraception prescribed by another provider? No.

> -Are you are willing to administer a depo injection prescribed by another provider? No.
> -Can you advise patients currently on birth control that a back up method is recommended while taking antibiotics? Yes, I do this routinely.
> -If a patient presents to the clinic requesting initiation of contraception, ore you willing to act as the facilitator of that visit; obtain the insurance and demographic info and the HPL willing to discuss with the patient the type of contraception options and ensure that it is clinically appropriate according to MC guidelines/best practice, willing to contact your SPM/CRP to prescribe the medication? (After a brief summary of the visit and patient history, the SPM will enter the chart and complete the smart set to prescribe the contraception. You will then close out the chart as usual.) No.

37. CVS did not require Ms. Schuler to report these events or the number of any customers who were not provided those services by Ms. Schuler.

38. Historically, from 2015 forward, CVS operated as a clinic and advertised to provide individuals with treatment for those eight categories of services. From 2015 CVS provided, as a part of the women's services category, counseling and advice about contraceptives, abortifacients, and other birth control options, and prescribing such medications of which CVS provided Ms. Schuler, as well as other CVS nurse practitioners such as Robin Strader and Paige Casey, religious accommodations to those requirements.

39. Ms. Schuler completed another Conscience Policy form on January 25, 2016.

40. Ms. Schuler again sought the autonomy and independence CVS promised, and she requested, and was provided, a religious accommodation to those requirements. Ms. Schuler continued to provide all of the services in the other seven service categories.

41. According to CVS, it expanded certain of its services in 2019 which included expanded pharmacy, health product, and wellness support. Those expanded services did not include providing the women's services it already provided beginning in 2015 from which CVS provided Ms. Schuler a religious accommodation.

42. Historically, if an individual sought to refill or prescribe contraceptives, Ms. Schuler would refer that individual to a nearby CVS store or to return on a different day (when Ms. Schuler was not on duty as a nurse practitioner).

43. CVS was able to efficiently provide any requested services by a customer while providing a religious accommodation to Ms. Schuler's religious convictions.

**6**

44. This arrangement of referring individuals to different CVS stores or returning at a later date was in place for approximately ten years: from 2011 through the date of Ms. Schuler's termination.

45. Nothing has changed since 2015 from the services CVS provided customers in terms of treatment, counseling, and advice about contraceptives, abortifacients, and other birth control options, and prescribing such medications.

46. Nothing changed in terms of the job description of a nurse practitioner according to the position summary of CVS for that position in 2021 and nothing in the 2021 job description added different obligations that did not exist under the prior published job description.

47. Of the 1100 locations for Minute Clinics in 33 states in the United States, only a very small percentage of nurse practioners made religious accommodation requests for providing similar women's services of which Ms. Schuler asked for an exemption.

48. Ms. Schuler primarily worked at CVS Store and Pharmacy located at 18351 West 119th Street, Olathe, Kansas but was expected to travel to and staff other clinics as needed by the business.

49. Ms. Schuler was paid as a nurse practitioner while many of her job tasks were related to things such as registering clients, mopping floors, answering questions about services, waiting room management, ordering supplies, or requesting maintenance.

50. As of 2015, Ms. Schuler's other job responsibilities included providing services for "minor illnesses," "minor injuries" "Screenings & monitoring" "skin conditions" "travel health," "vaccinations and injections," "wellness & physicals," and "women's services."

51. Regarding the category of "women's services" CVS has been providing those same services to customers since 2015 while providing CVS nurse practitioners religious accommodations.

52. CVS always had on duty a nurse practitioner at a nearby pharmacy who would prescribe birth control when Ms. Schuler was on duty as a nurse practitioner at the Olathe CVS pharmacy.

53. The Olathe CVS clinic was not staffed on a daily basis to provide every service to a customer (beyond those that Ms. Schuler could not provide). There were services that required both a nurse practitioner and a RN/LPN.

54. Historically, staffing of CVS clinics to have an RN/LPN on simultaneous duty with a nurse practitioner did not occur.  There were not enough RN/LPN applicants.  For the Kansas metropolitan area, CVS generally only had an RN/LPN assigned to three of ten or eleven CVS clinics which did not cover the entire operational day or to cover all of the seven days in the week.

55. Referrals of CVS customers to other CVS clinics because of staffing deficiencies was normal. CVS customers would not necessarily go online to set an appointment but instead walk in.  When that happened, there were times that a waiting list would be full and the customer could not sign in at the CVS clinic for that day.  Those customers were routinely told to try another CVS clinic or return the next day.

56. In recent years when CVS began providing a variety of women's services (STI testing, pap smears) there were times that a CVS clinic did not have an RN/LPN on staff for that day.  Those customers were referred to another clinic that did have that staff if they needed a pelvic exam (and therefore a nurse practitioner needed a chaperone).

57. As a general practice, usually appointments are made by the customer via the Minute Clinic website, and there are limited choices for the reason for visit.  Even if a customer scheduled as "Women's Services" there was no further designation as to whether the Clinic was staffed to provide the service (such as having an RN/LPN chaperone) until the customer came to the clinic and asked.  At that point the Clinic would call to other CVS clinics to ascertain whether a nurse practitioner and RN/LPN were staffed to provide the service. Or the service would be scheduled at a later date for the customer in which a nurse practitioner and RN/LPN would be staffed at the CVS clinic location.

58. There were numerous times that women seeking services (other than birth control) were referred to other CVS clinics because of staffing in not having an RN or LPN act as chaperone or assistant during procedures.

59. CVS later changed the CVS nurse practitioner job position summary as providing "holistic" care but its actual job description under "primary duties and responsibilities" included "patient counseling: inclusive of pregnancy prevention, STI Prevention/safer sex practices, contraceptive care counseling and medication management."  But these were job descriptions for CVS nurse practitioners which CVS provided religious accommodations.

60. The only thing that changed in 2021 was that CVS labeled providing counseling and advice about contraceptives, abortifacients, and other birth control options as "essential functions."

61. There were no complaints from co-workers, patients, or supervisors while her accommodation was in place or at any time during her employment with Defendants.

62. Ms. Schuler's work was outstanding, and she had no performance issues throughout her employment with Defendants.

63. The plaintiff has a bona fide religious belief that conflicts with an employment requirement.

64. The defendants were aware of Ms. Schuler's beliefs and accommodated them in providing the same services CVS provided since 2015 as it continues to provide in 2022.

65. The prior accommodations provided Ms. Schuler by CVS were reasonable and did not cause CVS to suffer any hardship in providing it.

66. In 2021, CVS stopped permitting Ms. Schuler to operate autonomously and independently by requiring her to provide the previous exempted women's services.

67. Ms. Schuler was terminated for failure to comply with the conflicting employment requirements.

68. The defendants withdrew their previous religious accommodations provided because of Ms. Schuler's religious convictions.

69. CVS did not require CVS nurse practitioners to report events in which they were exercising their respective religious accommodation, or any events in which a customer was referred to another CVS store for any reason, or counseled to return to the same CVS store to receive the requested service.

70. CVS did not conduct a reasonable investigation into continuing the religious accommodations provided Ms. Schuler.

71. It was not an undue hardship upon CVS to provide Ms. Schuler, Ms. Strader, or Ms. Paige, a religious accommodation to providing all of the women's services that CVS offered prior to 2021.

72. CVS did not lose customers or sales because of providing Ms. Schuler her religious accommodations since 2019.

73. Of the hundreds of customers that Ms. Schuler provided services as a nurse practitioner at CVS every month, the number of customers requesting birth control was rare for any given year.  And of those individuals of whom the religious

accommodation applied, Ms. Schuler referred to another CVS store or to return when a different nurse practitioner was on duty.

74. CVS has no documentation as to any customers, their number, or dollar amount in sales being lost since providing Ms. Schuler a religious accommodation.

75. CVS has no documentation that it was required to hire additional nurse practitioners or any staff as a direct result of providing Ms. Schuler a religious accommodation since 2019.

76. CVS has no documentation that demonstrates CVS was required to rearrange staffing or incur additional costs as a result of providing Ms. Schuler a religious accommodation since 2019.

77. The proffered hardship espoused by CVS in continuing to provide Ms. Schuler a religious accommodation is vague, undocumented, and relies solely upon hypotheticals and speculation.

78. In fact, CVS has historically provided the same women's services through its nurse practitioners since 2015 while accommodating nurse practitioner's religious convictions without it being bothersome to administer or disruptive of the operating routine, or being any hardship at all, much less an undue hardship, upon CVS.

79. Providing these religious accommodations to nurse practitioners Schuler, Strader, and Paige did not cause employee disruptions, jeopardize safety, cause other nurse practitioners to work longer hours, nor did it cause CVS to lose any customer traffic.

80. CVS was not required to hire any additional workers nor did it suffer the loss of production because of a nurse practitioner's religious accommodation.

81. There were no hardships that actually resulted in CVS providing religious accommodations to nurse practitioners Schuler, Paige, and Strader since 2011.

82. Between 2011 and 2022, CVS has no documentation demonstrating the number of customers who were told by a CVS nurse practitioner to go to a different CVS store to obtain women's services or to return on a different day at the same CVS store to obtain those services.

83. Similarly, between 2011 and 2022, CVS has no documentation demonstrating any loss of income or added expenditures resulting from a customer told by a CVS nurse practitioner to go to a different CVS store to obtain women's services or to return on a different day at the same CVS store to obtain those services.

84. CVS has no evidence of any loss of customer satisfaction, store traffic, or profits associated with providing religious accommodations to CVS nurse practitioners since 2011.

85. CVS has no evidence of any loss or increase in market share, customer loyalty, or store traffic due to accommodating or not accommodating the religious beliefs of a CVS nurse practitioner since 2011.

86. Similarly, CVS has no evidence of an increase in customer satisfaction, store traffic, or profits associated with not providing religious accommodations to CVS nurse practitioners since 2021.

87. There were no hardships to CVS in providing the religious accommodations to its nurse practitioners in CVS pharmacies providing the same services of prescribing abortion-inducing medications or services.

88. Whatever burden CVS might have experienced since 2011 in accommodating Ms. Schuler, it is a burden CVS has already absorbed, without any demonstrated measurable cost, for at least Ms. Schuler and the other three nurse practitioners with religious exemptions.

89. As *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 960 (8th Cir. 1979) held, "if an employer stands on weak ground when advancing hypothetical hardships in a factual vacuum, then surely his footing is even more precarious when the proposed accommodation has been tried and the postulated hardship did not arise."

90. The prior religious accommodations were reasonable and CVS was requested to continue providing those which it refused to do.

91. CVS now requires appointments for all services and could easily set up an appointment at a CVS location on a time and date which could provide for a women's service which would accommodate Ms. Schuler's religious convictions.

92. CVS did not act in good faith in any interactive communication process.

93. The issue of continuing religious accommodations to CVS nurse practitioners became moot when CVS failed to engage each nurse practitioner in "a meaningful dialogue" about the accommodation request to performing the same duties and learn whether an acceptable accommodation would impose undue hardship upon CVS.

94. CVS announced a one-size-fits all approach to any accommodations for nurse practitioners that had been utilized for years which deprived nurse practitioners such as Ms. Schuler, Ms. Paige, and Ms. Strader of the conversation necessary to discover what accommodations were possible.

95. CVS did not propose to Ms. Schuler any religious accommodation and instead told her either to find a new job with a new employer or forego her religious convictions to keep her current nurse practitioner position.

96. Pursuant to 42 U.S.C.A. § 2000e-2(a)(1) it is "an unlawful employment practice for an employer. . . to discharge any individual . . . because of such individual's . . . religion."

97. CVS terminated Ms. Schuler's employment because of her religion before attempting to continue her prior religious accommodation or any accommodation of any kind.

98. At the time of Ms. Schuler's termination, CVS was still allowing CVS nurse practitioners to be employed while not providing the same women's services that Ms. Schuler would not perform and was terminated because of her religious convictions.

99. CVS refused to accommodate meaning "allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary."

100. The Supreme Court has observed that this "intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 773 (2015), and that "Title VII does not demand mere neutrality with regard to religious practices [of employees]—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]" *Id.* at 775.

101. Wherefore, the plaintiff requests that the Court grant her the relief requested including the following: compensation for:

  a. Termination or employee misconduct contained in her personnel file;
  b. Deterioration in job skills;
  c. Lost bonus pay;
  d. Lost seniority;
  e. Loss of preferential shifts and other adverse impacts on working conditions;
  f. Loss of wages; and
  g. Extreme stress and anxiety.

The plaintiff has suffered the losses and damages described in this petition.

WHEREFORE, the plaintiff Suzanne Schuler requests damages, including lost benefits and wages due to her termination, unpaid lost wages due to wrongful discharge or constructive discharge, back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental and emotional distress, suffering and anxiety, reductions in wages, expenses costs and other damages due to each of the defendant's wrongful conduct; award the plaintiff reasonable attorneys' fees and costs; and grant any other relief that the Court deems just, proper, and equitable.

## JURY TRIAL DEMAND

PLAINTIFF HEREBY REQUESTS A JURY TRIAL

By:/s/Linus L. Baker
Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Missouri 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Kansas City Area Office
400 State Ave, Suite 905
Kansas City, KS 66101
(913) 340-8810
Website:  www.eeoc.gov

# DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/28/2022

**To:** Suzanne Schuler
1037 S Valley Rd
Olathe, KS 66061

Charge No: 563-2022-00500

EEOC Representative and email:   Natascha DeGuire
Area Director
natascha.deguire@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 563-2022-00500.

On behalf of the Commission,

Digitally Signed By: David Davis
09/28/2022

David Davis
Acting District Director

**cc:**
Kimberly Lawrence
David M Jaffe
CVS
1 CVS DR
Woonsocket, RI 02895

Jaclyn Kugell
Catherine Scott
Morgan Brown & Joy LLP
200 State St Ste 11A
Boston, MA 02109

Linus L Baker

6732 West 185th Terrace
Stilwell, KS 66085


Please retain this notice for your records.